IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08cv41-V-2
(5:03cr4-V)

| | |
|---|---|
| **RODERICK LAMAR WILLIAMS,** )<br>    Petitioner, )<br>)<br>v. )<br>)<br>**UNITED STATES OF AMERICA,** )<br>    Defendant. )<br>_____) | **ORDER** |

**THIS MATTER** comes before the Court on Petitioner's Motions for Leave to Supplement his Motion to Vacate pursuant to Rule 15 of the Federal Rules of Civil Procedure (Doc. Nos. 22, 23, 26, 29, 40, 42, 49, 50 and 53); Petitioner's Motion for Discovery pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings (Doc. No. 24); Respondent's Motion for an Extension of Time (Doc. No. 26); Petitioner's Motion to Strike Respondent's Answer (Doc. No. 35); Petitioner's Motion for Clarification (Doc. No. 39); Petitioner's Motion for Discovery and to Appoint a Forensic Blood Expert (Doc. No. 47); and Petitioner's Renewal of his Motion for Discovery and for Appointment of Forensic Expert. (Doc. No. 54).

On May 19, 2008, Petitioner filed a Motion to Vacate raising 13 claims which boil down to arguments that he was subjected to ineffective assistance of counsel when: (1) trial counsel failed to have the evidence regarding his history with a drug organization suppressed; (2) trial counsel failed to file motions to correct "Affiant Ramsey's false testimony," and failed to "properly make [a] specific Franks argument" as Petitioner requested; (3) trial counsel refused Petitioner's request for a blood splatter expert to examine a plastic bag and other items which were admitted as evidence; (4) trial and appellate counsel failed to raise a Fourth Amendment

search and seizure claim challenging the evidence that was obtained during a traffic stop; (5) trial counsel allowed false and/or conflicting testimony from certain witnesses during both Petitioner's suppression hearing and his trial; (6) trial and appellate counsel failed to challenge the instructions which allowed the jury to determine the quantity of cocaine or cocaine base which was involved in the entire conspiracy, rather than the quantities which were attributable to Petitioner; (7) trial counsel withdrew from the case during sentencing, thereby compelling Petitioner to proceed pro-se; (8) trial counsel precluded Petitioner's efforts to raise <u>Apprendi</u>-based objections to his Career Offender designation, and objections to the use of the term "cocaine base" in his Indictment; and (9) appellate counsel labored under an "active conflict of interest" by virtue of his belief that Petitioner is guilty. (Doc. No. 1 at 4-24). On June 2, 2008, the Court entered an Order directing Respondent to answer Petitioner's claims. (Doc. No. 3).

On June 24, 2008, Petitioner supplemented his Motion to Vacate with excerpts from his trial transcript, a copy of the program from his mother's funeral service, a petition requesting a new trial signed by citizens from his community, and an affidavit from the person who collected those signatures. (Doc. No. 4). On September 9, 2008, Petitioner amended his Motion to Vacate to include a claim that trial counsel was ineffective for having failed to recall a witness for the purpose of impeaching that witness' testimony. (Doc. No. 18).

On October 9, 2008, Petitioner filed documents captioned as a Motion to Supplement Pursuant to Federal Rules of Civil Procedure, Rule 15(a). (Doc. Nos. 22 and 23). The first of the two supplements proposes a claim that counsel was ineffective for having failed to have an expert examine the blood evidence and/or seek the exclusion of unreliable blood evidence recovered from a crime scene on July 25, 2002. (Doc. No. 22 at 3). According to Petitioner, counsel became aware of this potential claim while cross-examining two witnesses, yet he failed

2

to seek the assistance of an expert to establish that the officers failed to use precautionary procedures to ensure the integrity of the blood evidence. (Id. at 3-4). Last, Petitioner proposes to argue that appellate counsel was ineffective for having failed to raise a claim challenging the unreliability of the blood evidence. (Id. at 4).

The other supplement (Doc. No. 23) proposes a claim that counsel was ineffective for failing to obtain "necessary documents" from a correctional facility to establish the falsity of Analyst Brenda Bessette's testimony by showing that Petitioner's DNA already was in the N.C. database. (Id. at 3-4). Further, Petitioner seeks to add a claim that appellate counsel was ineffective for having failed to raise a due process claim on the basis of that testimony. (Id. at 4).

The foregoing Motions were filed prior to December 3, 2008, when Respondent filed its response to the Motion to Vacate. Therefore, because leave of Court was not required for the proposed amendments, Petitioner's Motion to Vacate will be deemed amended by the subject claims and his Motions (Doc. Nos. 22 and 23) will be dismissed as moot.

On November 17, 2008, Petitioner filed a Motion for Discovery pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings. (Doc. No. 24). Petitioner's Motion seeks the production of "the entire North Carolina State Bureau of Investigation crime laboratory notebook concerning the DNA analysis performed on evidence pertaining to the July 25, 2002 crime scene (case # R2002-00889 & R2002-193581)," consisting of the "lab report summarizing the results and methods used"; the "case note cover sheet"; "the [e]vidence worksheet (chain of custody)"; the "[t]ranfer sheet indicating chain of custody"; the "[r]eport on extraction method used to obtain the DNA"; the "[p]hotograph of physical evidence from which the biological sample was collected"; "computerized data, printout of DNA Sample Sequential Numbering

System page assigning DSSNS Number and analyst number for each sample analyzed; the DNA extraction, "quantitation" and amplification worksheets; the "STR" records and results worksheets identifying reagents, equipment, standards and individual analysis identifying the alleles found; a printout of the actual "STR" profile from the evidentiary sample; the positive control worksheet and profile printout; the negative control "STR" printout; and a "[p]rintout of N.C. database search of evidence profiles (plastic bag & light switch plate) performed by Brenda Bissette." (Id. at 2). Such Motion also seeks the production of nine separate Government exhibits. (Id. at 3). In support of his expansive requests, Petitioner asserts that such evidence inevitably will assist him with demonstrating that trial and appellate counsel were deficient as alleged under his fourth and sixth claims. (Id. at 1 and 3). However, such representation still is vague and does not precisely explain how Petitioner believes the subject materials will be helpful to him. See United States v. Roane, 378 F.3d 382 (4th Cir. 2004) (discussing "good cause" requirement for discovery under Rule 6(a)).

Nor do the proposed supplemental arguments in support of this Motion rescue it from its deficiencies. (See Doc. Nos. 29 and 30, 42 and 43: Motions to Supplement Motion for Discovery and proposed supplemental arguments, respectively). The instant Motion proposes to assert that the requested discovery will assist him in establishing "counsel's awareness with the unreliability of the blood evidence"; substantiate that counsel was ineffective for failing to hire an expert to examine the blood evidence; and will "provide necessary proof of counsel's culpability with the prosecution's presentation of known false evidence" in violation of his Fifth Amendment rights. (Doc. No. 30 at 1-2).

In addition, on May 8, 2008, Petitioner filed another Motion to Supplement his Motion for Discovery pursuant to Rule 15. (Doc. No. 42). The proposed supplement purports to be a

4

Petition signed by "concerned citizens" from Petitioner's former community whereby they "respectfully request[] authority to obtain exonerating documents from the S.B.I." in order to "clarify the month/date/year Movant's DNA profile was added to the N.C. database . . . ." (Doc. No. 43 at 1-2). Because the first set of supplemental assertions still are conclusory and neither group of assertions establish good cause, the Court will <u>deny</u> the Motions to Supplement (Doc. Nos. 29 and 42) as futile. Furthermore, Petitioner's Motion for Discovery (Doc. No. 24) will be <u>denied</u> without prejudice.

On November 17, 2008, Respondent filed a final Motion for Extension seeking permission to file its answer to Petitioner's Motion to Vacate on or before December 3, 2008. (Doc. No. 26). Such Motion is supported by good cause. Therefore, the Court will grant Respondent's Motion for Extension, <u>nunc pro tunc</u>.

On December 29, 2008, Petitioner filed a Motion to Strike Respondent's answer as time-barred. (Doc. No. 35). However, in light of the Court's decision to grant Respondent's final Motion for an Extension of Time, <u>nunc pro tunc</u>, Petitioner's Motion to Strike will be <u>dismissed</u> as moot.

On February 4, 2009, Petitioner filed a Motion for Clarification seeking permission to clarify that his Motions for Leave to Supplement (Doc. Nos. 22 and 23) were brought pursuant to Rule 15(d) of the Federal Rules of Civil procedure, not Rule 15(a); and that the second of the two Motions for Leave to Supplement (Doc. No. 23) should have referenced his fifth claim, not his sixth claim. (Doc. No. 39). Although the subject clarifications do not establish that Petitioner's Motions should be granted, they do tend to clarify certain matters for the Court and Respondent. Therefore, Petitioner's Motion for Clarification (Doc. No. 39) will be <u>granted</u>.

Also on February 4, 2009, Petitioner filed another Motion to Supplement, reportedly

5

seeking permission to supplement his response to Respondent's Motion for Summary Judgment. (Doc. No. 40). However, a review of the proposed supplement (Doc. No. 41) reflects that Petitioner actually is seeking permission to amend his sixth claim -- that appellate counsel was ineffective for raising a weaker claim in the place of a "significant and obvious issue" -- to allege that this Court committed Booker[1] error by relying on "an improper guideline offense level of 38 (360-Life) on grouped drug counts . . . because the [C]ourt did not consider the § 3553(a) factors in conjunction with the correct guideline range of 360 months statutory maximum (Level 12) . . ." as required under United States v. Byrd, 278 F. App'x 227 (4th Cir. 2008) (quoting Gall v. United States, 552 U.S. 38 (2007). (Doc. No. 41 at 2). Such Motion also seeks permission to amend that original claim against appellate counsel to allege that he should have raised a "significant and obvious issue (Collins Claim). See Mayo v. Henderson, 13 F.3d 528, 533 (2d. Cir. 1994)." (Id. at 3) (single internal quotation mark omitted). (Id.).

Rule 15(a) provides, in pertinent part, that when more than 20 days have expired after a responsive pleading has been filed, "a party may amend its pleading only with . . . the court's leave." Fed. R. Civ. P., Rule 15(a)(2) (2009).[2] Although the Court "should freely give leave when justice so requires," id., the Court may "deny a motion to amend when the amendment would be . . . futile." Equal Rights Center v. Niles Bolton Assocs., 602 F.3d 597, 603 (4th Cir. 2010).

Here, Petitioner seeks to add claims that appellate counsel was ineffective for failing to raise a "Collins claim." However, such an allegation would fail as a matter of law. Indeed,

---

[1] United States v. Booker, 543 U.S. 220 (2005).

[2] The Court cites to the version of Rule 15(a) that was in effect when Petitioner filed the subject Motion.

Petitioner does not identify on which of the numerous Collins cases his proposed claim is based. Nor does he precisely identify the argument he believes appellate counsel should have raised under Collins. As such, even if the Court were to allow Petitioner to amend his Motion to Vacate to include this vague allegation, such allegation would not entitle Petitioner to any relief.

Concerning his other proposed claim, Petitioner seeks to add a claim that appellate counsel was ineffective for failing to challenge his sentence under United States v. Byrd, 278 F. App'x 227 (4th Cir. May 13, 2008). However, inasmuch as that unpublished 2008 case was decided nearly a year after the United States Supreme Court denied Petitioner's certiorari petition, counsel could not have been ineffective for failing to argue such case on appeal. Moreover, even if Petitioner is attempting to argue that counsel should have raised a claim under Gall, such allegation still would not entitle him to any relief as Gall also was decided approximately six months after Petitioner's certiorari petition was denied. In sum, therefore, even if Petitioner could establish that these two proposed claims somehow relate back to his original allegation and, therefore, were timely filed, such claims would be subject to summary dismissal as legally baseless. Ultimately, Petitioner's de facto motion to amend (Doc. No. 40) must be denied as futile.

On October 28, 2009, Petitioner filed a Motion for Appointment of Forensic Blood Expert Pursuant to Rule 6(a) of the Rules Governing 28 U.S.C. § 2255. (Doc. No. 47). In support of his Motion, Petitioner asserts, among other things, that he already supplemented his Motion to Vacate to allege a claim that trial counsel was ineffective for having failed to hire a forensic expert and/or seek exclusion of the unreliable blood evidence; and that he also has moved the Court for certain discovery materials and has provided an explanation of how such materials would assist him in establishing his claim.

7

The request for the appointment of a forensic expert is governed by 18 U.S.C. § 3599. That Rule provides that "[i]n any post conviction proceeding under section . . . 2255 . . . any defendant who is or becomes financially unable to obtain . . . investigative, expert or other reasonably necessary services shall be entitled to the appointment . . . of such other services . . . [u]pon a finding that investigative, expert, or other services are reasonably necessary for the representation of the defendant . . . ." 18 U.S.C. § 3599(2)(f). The Fourth Circuit has said that such services are "reasonably necessary" when "a substantial question exists over an issue requiring expert testimony for its resolution and the defendant's position cannot be fully developed without professional assistance." Wright v. Angelone, 151 F.3d 151, 163 (4th Cir. 1998) (internal quotation marks omitted) (quoting Williams v. Martin, 618 F.2d 1021, 1026 (4th Cir. 1980). See also Lawson v Dixon, 3 F.3d 743, 753 (4th Cir. 1993) (analyzing request for appointment of expert under former standard and determining that appointment is not required unless evidence forecasted by experts would require evidentiary hearing to resolve claims); and Fuller v. Johnson, 114 F.3d 491, 502 (5th Cir. 1997) (investigative or expert services are not "reasonably necessary" unless they can be tied to viable habeas claim of constitutional proportions.).

In the case at bar, Petitioner is correct that his Motion to Vacate now contains an allegation that counsel should have hired an expert to undermine the Government's blood evidence. However, the Government has not yet been directed to respond to that claim. Therefore, until the Government responds to this precise allegation, the Court cannot determine whether Petitioner can establish that an expert is reasonably necessary to his defense. Therefore, Petitioner's Motion (Doc. No. 47) will be denied, without prejudice, as premature.

On May 6, 2010, Petitioner filed a Motion to Supplement his Motion to Vacate with the

Affidavit and report of Vince Miller, Vice President and Chief Technical Officer of Chromosomal Laboratories, Inc. (Doc. No. 49). The Affidavit states that Mr. Miller "reviewed the information in the [case of State v. R. Williams]. (Id. at 17.) Such "information" consists of "[c]opies of court-related documents[;] [l]etters from [Petitioner] describing his requests for review[;] [a] partial copy of the Courtroom testimony U.S. vs. Roderick Williams . . .July 15th, 2004[; and the] North Carolina State Bureau of Investigation Laboratory Report - Dated 12/10/03." (Id. at 10). Notably, however, Miller's findings note that his opinions "are based on the testimony transcripts submitted for review"; that it was "not possible to evaluate the quality or validity of the data used to reach the conclusions as electropherograms, bench notes and other laboratory data was not included in the package submitted [to his company; and that] [i]t would be prudent to perform a complete review of the laboratory records." (Id. at 13). Nevertheless, Mr. Miller opined that "the integrity of the plastic bags containing a white substance, light switch, pants, gun and wallet is in serious doubt and may have been compromised"; and that "there are serious questions about the integrity of the samples and the validity of the conclusions drawn." (Id. at 13-14). Miller further reiterates that it was impossible "to evaluate the quality and validity of the data used to reach [his] conclusions . . . " because certain additional materials were not submitted for evaluation, and opines that "[w]hile there was no indication that the process was compromised or invalid, it would be prudent to perform a complete review of the laboratory records." (Id. at 14).

Respondent has not yet been directed to respond to this Motion to Supplement. Therefore, the Court will direct Respondent to file a response and will defer its ruling on the subject Motion (Doc. No. 49) until after it has an opportunity to evaluate that response.

On June 1, 2010, Petitioner filed a Motion for leave to Supplement his Motion to Vacate

with an exhibit consisting of a copy of a U.S. Probation Officer's Report alleging that Tanesha Turner was in violation of her supervised release along with a copy of a report authored by certain private investigators whom Petitioner hired. (Doc. No. 50 at 1 and 8-10). Court records reflect that Ms. Turner was a witness against Petitioner at trial. Petitioner contends that such proposed exhibit supports his fifth claim that his attorney was ineffective for failing to properly object to known false testimony. The private investigators' report involves the interview of "Intensive Surveillance Officer John Green," who reportedly stated that he visited Petitioner on July 22, 23 and 25 of an unspecified year; that Petitioner was home on those occasions; and that Green went to Petitioner's home on July 28 of an unspecified year, but Petitioner was not at home (Doc. No. 49 at 9). Such report further states that investigators interviewed Sergeant Michael Sharp of the Statesville Police Department; that Sharp reportedly told investigators that he could not remember seeing Petitioner at any of the events that occurred on or about July 28, 2002. (Id.). Last, that report gives a summary of Petitioner's arrest records in North Carolina and Washington, D.C. ; and represents that no records were found for an arrest of Petitioner in the State of New Jersey. (Id. at 8).

Respondent has not yet been directed to respond to this Motion to Supplement. Therefore, the Court will direct Respondent to file a response and will <u>defer</u> its ruling on the subject Motion (Doc. No. 50) until after it has an opportunity to evaluate that response.

On August 12, 2010, Petitioner filed another Motion to Supplement his third claim -- that his attorneys were ineffective because they allowed known perjured testimony at his suppression hearing to go unchallenged -- with newspaper articles discussing alleged improprieties committed by the blood pattern analysts at the State Bureau of Investigation. (Doc. No. 53 at 1). Petitioner contends that such evidence establishes that "there stands an overwhelming

10

probability that Analyst Susie Barker performed Pheholohthalen test [sic] (according to her testimony) and deliberately withheld a more specific conclusive test that indicated substance was not human blood." (Id. at 2).

Respondent has not yet been directed to respond to this Motion to Supplement. Therefore, the Court will direct Respondent to file a response and will <u>defer</u> its ruling on the subject Motion (Doc. No. 53) until after it has an opportunity to evaluate that response.

Last, on September 13, 2010, Petitioner filed a Motion to Renew his earlier Motion for Discovery seeking for the appointment of a forensic expert. (Doc. No. 54). However, the Motion which Petitioner is seeking to renew (Doc. No. 47) is being ruled upon in this Order, therefore, the instant Motion to Renew such earlier Motion will be <u>dismissed</u> as moot.

**NOW, THEREFORE, IT IS ORDERED that:**

1. Petitioner's Motions to Supplement (Doc. Nos. 22 and 23) are **DISMISSED as moot**. However, Petitioner's Motion to Vacate shall be deemed timely amended to include the allegations set forth in these two Motions, namely, that trial counsel was ineffective for failing to have an expert examine the blood evidence recovered on July 25, 2002 and/or to seek the exclusion of said evidence as unreliable; that appellate counsel was ineffective for having failed to raise a claim challenging the unreliability of the blood evidence; and that trial counsel was ineffective for having failed to obtain the necessary documents from a correctional facility to establish the falsity of Analyst Brenda Bissette's testimony by showing that Petitioner's DNA already was in the N.C. database.

2. Petitioner's Motion for Discovery pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings (Doc. No. 24) is **DENIED, without prejudice, as premature**.

3. Respondent's Motion for Extension (Doc. 26) is **GRANTED, <u>nunc pro tunc</u>**.

4. Petitioner's Motion to Strike Respondent's response as time-barred (Doc. No. 35) **is DISMISSED as moot**.

5. Petitioner's Motion for Clarification (Doc. No. 39) is **GRANTED**.

6. Petitioner's Motion to Supplement (Doc. No. 40) is **DENIED as futile**.

7. Petitioner's Motions to Supplement (Doc. Nos. 29 and 42) are **DENIED as futile**;

8. Petitioner's Motion for Appointment of Forensic Blood Expert Pursuant to Rule 6(a) of the Rules Governing § 2255 Proceedings (Doc. No. 47) is **DENIED, without prejudice, as premature**.

9. Petitioner's Motions to Supplement (Doc. Nos. 49, 50, and 53) all are **DEFERRED** pending a response from Respondent.

10. Petitioner's Motion to Renew his Motion for Appointment of Forensic Blood Expert (Doc. No. 54) is **DISMISSED as moot**.

11. Within forty (40) days of the entry of this Order, Respondent shall respond to Petitioner's amended claims (as described in paragraph number one above).

12. Within thirty (30) days of the entry of this Order, Respondent shall respond to Petitioner's Motions to Supplement (Doc. Nos. 49, 50 and 53).

13. The Clerk shall send copies of this Order to the parties.

**SO ORDERED**.

Signed: February 24, 2011

Richard L. Voorhees
United States District Judge